IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THEODORE DAVID CATER                                                                    PLAINTIFF

    V.                              Civil No. 2:23-cv-02108-PKH-MEF

MARTIN O'MALLEY, Commissioner,
Social Security Administration                                                         DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Theodore Cater ("Cater"), brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.   Procedural Background

Cater filed his applications for DIB and SSI on August 12, 2020[1], alleging disability since February 26, 2020, due to cardiac problems necessitating a pacemaker, lower extremity swelling requiring him to use a cane, a genetic blood disorder, anxiety, and depression. (ECF No. 8, pp. 108, 124, 145, 275-290, 312). An administrative hearing was held telephonically before Administrative Law Judge ("ALJ") Edward Starr on February 24, 2022. (*Id*. at 51-71). Cater was present and represented by counsel.

---

[1] Plaintiff's prior applications for DIB and SSI were denied by ALJ Glenn Neel on February 25, 2020, and affirmed by this Court on February 11, 2021. (ECF No. 8, pp. 75-90, 139).

Born in August 1977, Cater was 42 years old on his alleged onset date and possessed a General Equivalency Diploma ("GED"). (ECF No. 8, pp. 30, 107). He had past relevant work ("PRW") as a welder. (*Id*. at 30, 313).

On August 4, 2022, ALJ Starr identified Cater's ischemic heart disease, depression, anxiety, and hypertension as severe impairments, but concluded Cater did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF No. 8, p. 22). Despite his impairments, the ALJ found that Cater retained the residual functional capacity ("RFC") to perform sedentary work, requiring occasional balancing, crawling, kneeling, stooping, crouching, and climbing ramps and stairs, but no climbing ladders, ropes, or scaffolds; occasional exposure to pulmonary irritants; and simple, routine, and repetitive tasks involving simple, direct, and concrete supervision, and with occasional interaction with coworkers and the public. (*Id*. at 23). With the assistance of a vocational expert ("VE"), he determined there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including addresser, table worker, and nut sorter. (*Id*. at 31).

The Appeals Council denied Cater's request for review on June 23, 2023. (ECF No. 8, pp. 5-10). He subsequently filed this action on January 27, 2023. (ECF No. 2). Both parties have filed appeal briefs (ECF Nos. 10, 12), and the matter is ready for Report and Recommendation.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must

affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The

fact finder will only consider Plaintiff's age, education, and work experience in the light of his residual functional capacity if the final stage of the analysis is reached.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   Discussion

Cater raises four issues on appeal: (1) whether the ALJ fully and fairly developed the record; (2) whether the ALJ erred at Steps Two and Three of the sequential evaluation by omitting the separate cardiac impairment of congestive heart failure, the Factor V Leiden mutation causing recurrent clots, and chronic DVT in his bilateral lower extremities; (3) whether the ALJ properly considered his subjective complaints; and (4) whether the RFC determination is supported by substantial evidence.  Following a thorough review of the record, the undersigned agrees that the RFC determination lacks substantial support in the record.

RFC is the most a person can do despite that person's limitations.  20 C.F.R. §§ 404.1545, 416.945.  A disability claimant has the burden of establishing his RFC, but the ALJ ultimately determines the RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations."  *Vossen*, 612 F. 3d at 1016; *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); and *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)).  Therefore, it must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Here, the Plaintiff has a significant cardiac history, having suffered an ST-segment myocardial infarction ("STEMI") in 2016 requiring the placement of three drug-eluting stents. (ECF No. 8, p. 510). Angiography revealed a blockage in his left circumflex artery with a left ventricle ejection fraction ("EF") of 40 percent, indicative of congestive heart failure ("CHF"). Thereafter, a nuclear stress test showed an EF of only 34 percent. Ultimately, Cater was diagnosed with a STEMI, coronary arteriosclerosis, cardiomyopathy, and CHF. Despite patent stents, a heart catheterization conducted in September 2016 revealed an EF of only 20 to 25 percent. (*Id*.). Common among patients suffering severe myocardial infarctions, in December 2017, Cater's condition necessitated the implantation of a cardioverter-defibrillator ("ICD") to detect and stop cardiac arrhythmias. (*Id*.).

In early 2019, Cater was diagnosed with a deep venous thrombosis in his left lower extremity. (ECF No. 8, pp. 385-391). Dr. Jeffrey Medlock prescribed Eliquis, Finasteride, Pravastatin, and Nitroglycerin. Following complaints of shortness of breath on exertion and dizziness, in August 2019, an EKG recorded a right superior axis deviation, a T wave abnormality, and a possible infarction of undetermined age, all indicative of cardiac injury. (*Id*. at 397-402). Due to borderline blood pressure, cardiologist, Dr. Pratik Choksy adjusted his Lisinopril dosage.

In November 2019, Cater received emergent treatment for left-sided substernal chest pain that was responsive to Nitroglycerin. (ECF No. 8, pp. 457-463, 489, 581-582, 609-610, 921-922). His EKG continued to show nonspecific T wave abnormality and a remote inferior/true posterolateral myocardial infarction. During his hospital follow-up with advanced practice registered nurse ("APRN"), Linda Blasingame, the Plaintiff complained of increased chest pain and shortness of breath just walking to the restroom. (*Id*. at 15-422, 899-912). He also reported pain in his left lower extremity. A physical exam revealed trace edema in his left lower extremity

and musculoskeletal tenderness. Cater indicated that he needed his wife's assistance to perform activities of daily living. Nurse Blasingame referred him to the emergency room ("ER") for a pulmonary angiogram, which revealed small acute pulmonary artery embolus in the descending arteries bilaterally and the right middle lobe pulmonary artery distally, along with a right lower lobe pleural-based nodule or consolidation. (ECF No. 8, pp. 463-468, 490-491, 578-579, 606-607, 895-897). Anticoagulants were continued.

In late December, Cater returned to the ER with complaints of severe chest pain and shortness of breath while lying down. (ECF No. 8, pp. 468-482, 492-494, 574-576, 602-604, 878-881). Sitting up provided no relief. An EKG showed sinus tachycardia, biatrial enlargement, and a possible inferior/true posterolateral myocardial infarction. (*Id.* at 577-578, 873-875, 881-882). The ER physician noted that Cater suffered from Factor V Leiden, a clotting disorder making him more susceptible to blood clots. Cater responded well to the administration of a Nitroglycerine patch (indicating that the pain was, indeed, cardiac in nature) and Morphine.

In February 2020, Dr. Choksy noted the Plaintiff's defibrillator had documented two events during which his heart rate rose well above 100 beats per minute. (ECF No. 8, pp. 508-517). On one occasion it rose to 187 beats per minute and, on the other, it exceeded 200 beats per minute. These occurrences could represent sinus tachycardia, supraventricular tachycardia ("SVT"), or atrial tachycardia, but could not be definitively discerned from the recording. Although he was asymptomatic during the visit, Cater reported continued chest pain and dizziness. And, an echocardiogram, conducted in August, showed an ejection fraction rate of 35 to 40 percent.

In December, Cater's defibrillator again documented short runs of arrhythmia with his heart rate jumping to the 180s and into the ventricular tachyarrhythmia zone. (ECF No. 8, pp. 736-740). Noting his blood pressure to be controlled, Dr. Choksy increased Cater's Lisinopril dosage,

continued the Propranolol, and ordered a 30-day Holter monitor. The monitor ultimately showed predominant sinus rhythm with an average heart rate of 86 beats per minute, a minimum heart rate of 53 beats per minute, and a maximum heart rate of 175 beats per minute. (*Id*. at 568, 596, 720). However, due to excessive artifacts, the data could not be assessed for premature atrial contractions or premature ventricular contractions.

In August 2021, Cater began seeing primary care physician, Dr. Chans Nouansavane. (ECF No. 8, pp. 685-687). Dr. Nouansavane refilled his Metoprolol, Lisinopril, Apixaban, Clopidogrel, and Nitroglycerine and ordered labs. A cholesterol panel revealed hyperlipidemia and hyperkalemia, prompting Dr. Nouansavane to add Magnesium, Potassium, and Simvastatin to his medication regimen. (*Id*. at 666-671).

Regarding activities of daily living, Cater reported minimal activity. (ECF No. 8, p. 324-333). He stayed home most days, watched TV, read magazines, and folded laundry while seated. Additionally, Plaintiff cared for his personal hygiene, prepared only simple meals, did the dishes, went outside once per day, and could count change. These activities, however, hardly indicate that he could perform consistent work activities.

Despite this evidence, the ALJ concluded Cater could perform sedentary work requiring occasional balancing, crawling, kneeling, stooping, crouching, and climbing ramps and stairs, and exposure to pulmonary irritants, but no climbing ladders, ropes, or scaffolds; and simple, routine, and repetitive tasks involving simple, direct, and concrete supervision and occasional interaction with coworkers and the public. Unfortunately, we can find no evidence in the record to indicate the Plaintiff's ability to perform work-related tasks. *See Perks*, 687 F.3d at 1092. In fact, the SSA physicians reviewing Cater's medical records indicated they did not have sufficient evidence at the time of their decisions to determine his physical abilities. (ECF No. 8, pp. 115-116, 151-152).

As the record does not provide sufficient support for this level of work, remand is necessary to allow the ALJ to reconsider the Plaintiff's RFC.

Cater suffers from serious impairments, including CHF with approximately 34 percent heart function; hypertension; a blood clotting disorder; and chronic chest pain, shortness of breath, dizziness, and issues with cardiac arrhythmia requiring an ICD. As such, we believe that a consultative exam complete with an RFC assessment is necessary to allow the ALJ to determine the Plaintiff's ability to perform sedentary work, with even occasional postural activities, day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world. *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (holding ALJ is required to order medical examinations and tests if medical records are not sufficient to determine claimant's disability).

### IV. Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of July 2024.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE